UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP J. HOLMES,

              Plaintiff,                      Case No. 5:20-cv-13335
                                              District Judge Judith E. Levy
v.                                      Magistrate Judge Anthony P. Patti

FCA US LLC a/k/a Fiat Chrysler
Automobiles and FCA, FCA US LLC, Long
Term Disability Benefit Plan,

              Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION (ECF No. 12) TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF No. 8)

**I.    RECOMMENDATION**:  The Court should **GRANT** Defendants' motion (ECF No. 12) to partially dismiss Plaintiff's first amended complaint (ECF No. 8). Specifically, the Court should dismiss Counts II and III, and dismiss the breach of contract claim within Count I, permitting only the ERISA claim in Count I, as well as Counts IV and V, to go forward.

**II.    REPORT:**

    **A.    Introduction**

    Plaintiff, Philip J. Homes, was a former employee of Fiat Chrysler Automobiles ("FCA").  He filed this lawsuit to recover disability benefits under two different plans, one of which is governed by the Employee Retirement Income

Security Act (ERISA), and seeks relief based on five counts.  Defendant FCA has

filed the instant motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, seeking complete dismissal of Count II ("Equitable Relief, Declaratory

and Injunctive Relief") and Count III ("Breach of Fiduciary Duty").  FCA also

seeks partial dismissal of Count I ("Denial of Plan and Policy Benefits and Breach

of Contract") to the extent it is premised on a breach of contract theory.

### B.    Factual Background

Plaintiff asserts that Defendant FCA has wrongfully denied him disability

benefits under the company's Disability Absence Plan ("DAP") and Long Term

Disability ("LTD") Benefit Plan ("LTDBP").  (ECF No. 8, PageID.43-47, ¶¶ 2, 5,

11-27.)  He lists his disabilities and impairments to include "secondary

osteoarthritis of his right ankle and foot subsequent to triple arthrodesis, tibiotalar

osteoarthritis, insertion of PTT [posterior tibialis tendinopathy] tendinosis, Achilles

tendinosis and injuries to the ATFL and deep deltoid ligaments, hindfoot valgus,

subfibular impingement, atrophy of the abductor Digiti Quinti Minimi Muscle[],

and arthritis of his left knee with crepitus."  (*Id*., PageID.45, ¶ 15.)  Plaintiff's

employment with FCA as a manufacturing engineer required him "to stand, walk,

and climb most of the workday."  (*Id*., ¶ 12.)  Thus, he maintains that he "has been

unable to perform the material and substantial duties of his own or regular

occupation since his disability began" around September 30, 2019.  (*Id*., ¶ 16.)

### 1.    The DAP and LTDBP

During the course of his employment, Plaintiff was enrolled in the DAP, which provides benefits payable up to fifty-two weeks if the claimant is found to be "totally disabled" and "unable to perform his 'regular occupation.'" (*Id*., PageID.44-45, ¶¶ 8, 11.)  Both parties agree that the DAP is a short-term payroll practice plan not governed by ERISA according to 29 C.F.R. § 2510.3-1 (see ECF No. 1, PageID.44 ¶¶ 7, 9; ECF NO. 12-2, PageID.99.)  Section 8.01 of the DAP provides that "[t]he Company, through its duly authorized representatives, shall have the right to terminate the Plan at any time for any reason.  The Company, in its sole discretion, may choose to terminate immediately any or all benefits for any or all past, present, or future Employees."  (ECF No. 12-2, PageID.111.)  Section 8.02 of the DAP further provides that "[t]he Company . . . shall have the right at any time, and from time to time, to amend, in whole or in part, any or all provisions of the Plan" with respect to "any or all past, present, or future Employees" and "with or without retroactive effect."  (ECF No. 12-2, PageID.111-112.)

LTDBP provides long-term compensation to employees who, like under the DAP, are found to be "totally disabled."  (ECF No. 8, PageID.46, ¶ 22.)  Neither party disputes that LTDBP is an Employee Welfare Plan that falls under ERISA. (*Id*., PageID.44; ECF No. 12, PageID.81.)  LTDBP provides under Section 4.01

that an employee must have "exhausted DAP Payments" in order to be eligible for LTDBP benefits.  (ECF No. 8, PageID.47, ¶ 25.)   (*See also* ECF No. 12-3.)

Plaintiff was found disabled under the terms of the DAP and began receiving benefits from September 30, 2019 until they were terminated by FCA around January 31, 2020, *i.e.*, before fifty-two weeks had elapsed.  (*Id.*, PageID.45, ¶ 14.) Plaintiff alleges that he made a timely appeal of the termination to Sedgwick, the third-party claim administrator, which was denied despite "satisfactory proof of disability pursuant to the DAP."  (*Id.*, PageID.44 ¶ 8, 46 ¶ 17.)  Plaintiff timely filed for benefits under the LTDBP and was denied.  (*Id.*, PageID.47, ¶ 23.) Plaintiff once again appealed to Sedgwick, which allegedly denied that appeal solely on the basis of Section 4.01, as Plaintiff had not received the full fifty-two weeks of DAP benefits due to their termination.  (*Id.*, ¶¶ 24-25, 27.)  Plaintiff asserts that the denial of LTDBP benefits on these grounds ignored the substantive basis for disability benefits, namely his medical history, and, thus, denied him a "fair and full review" of his eligibility.  (*Id.*, ¶ 27.)  Further, Plaintiff argues that FCA's interpretation of Section 4.01 is an "incorrect methodology" that implicates "all Plan members and beneficiaries."  (*Id.*)  He instead submits, in response to the matter currently before the Court, that Section 4.01(c) is "properly interpreted" as an "exhaustion/waiting period" to show the claimant has been "disabled under [LTDBP] standards for 52 weeks."  (ECF No. 14, PageID.134.)  Lastly, Plaintiff

4

contends that the "wrongful, arbitrary and capricious and pretextual prior termination of DAP benefits "precluded Plaintiff from receiving or being eligible for [LTDBP] benefits."  (ECF No. 8, PageID.47, ¶ 27.)

## 2.    Plaintiff's claims

Plaintiff seeks redress on a few different theories.  Count I alleges that FCA's denial of disability benefits was a breach or violation of both the DAP and the LTDBP and, more specifically, a breach of contract with respect to the DAP. (ECF No. 8, PageID.48, ¶¶ 28-29.)  Count II seeks equitable, declaratory, and injunctive relief pursuant to 29 U.S.C. § 1132(a)(3), one of ERISA's civil enforcement provisions.  (*Id*., PageID.48-49, ¶¶ 30-34.)  Plaintiff requests pre-judgment and post-judgment interest to avoid unjust enrichment and make Plaintiff whole.  (*Id*., ¶ 31(a).)  Plaintiff also seeks a "declaratory ruling or application of equitable estoppel to preclude Defendants from interpreting and applying Section 4.01(c) incorrectly. . . ."  (*Id*., ¶ 31(b).)  As Plaintiff asserts, FCA's premature termination of his DAP benefits was a pretext to preclude entitlement to subsequent LTDBP benefits and, thus, constitutes "inequitable conduct" that removes the "reasonable claim procedure" required by 29 U.S.C. § 1133(2).  (*Id*., ¶¶ 32-33)  For that reason, Plaintiff requests that FCA be "enjoined or equitably estopped from relying on 4.01(c) of the [LTDBP] . . . ."  (*Id*., ¶ 32.)  Count III alleges a failure by FCA to discharge its fiduciary duties pursuant to 29 U.S.C. §

1104(a).  (*Id.*, PageID.49-50, ¶¶ 35-39.)  Plaintiff asserts that FCA's "incorrect and

inequitable methodology" of denying LTDBP claims – effectively delegation by

ERISA fiduciaries to "non-fiduciary DAP claims persons" – breached FCA's

fiduciary duty to Plaintiff and other beneficiaries.  (*Id.*, ¶ 37.)  Finally, Counts IV

and V request attorney fees, costs,  prejudgment interest, and post-judgment

interest.  (*Id.*, PageID.51, ¶¶ 40-43.)

### C.    Standard of Review

FCA moves for dismissal pursuant Fed. R. Civ. P. 12(b)(6).  (ECF No. 12.)

Preliminarily, the Court's consideration of the DAP and LTDBP plans does not

necessitate treating this motion as one for summary judgment for "presenting

matters outside the pleadings."  Fed. R. Civ. P. 12(d).  True, Plaintiff did not

append these items as exhibits to his amended complaint, although FCA attached

the full text of the DAP (ECF No. 12-2) and Section 4.01 of LTDBP (ECF No. 12-

3) as exhibits to its motion to dismiss.  Nonetheless, even if this extra factual

matter is technically outside the four corners of the amended complaint to which a

Rule 12(b)(6) motion is generally limited, the DAP and LTDBP are at the very

center of Plaintiff's claims and are referenced so heavily in the complaint that

recharacterizing the motion will be unnecessary.  *Bassett v. Nat'l Collegiate

Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with

a Rule 12(b)(6) motion, it may consider . . . exhibits attached defendant's motion

to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.").

As for whether Plaintiff's claims "state a claim upon which relief can be granted[,]" Fed. R. Civ. P. Rule 12(b)(6), the Court is required to accept as true "all well-pleaded factual allegations in the complaint . . . ." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint need not contain "detailed factual allegations," but mere "labels and recitations" or "a formulaic recitation of the elements of a cause of action" will not suffice to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.  Thus, a complaint withstands a Rule 12(b)(6) motion if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### D.    Argument

The instant motion to dismiss puts forward three challenges to the first three counts in Plaintiff's First Amended Complaint:  (1) Count I should be partially dismissed, because "DAP is not an enforceable contract[;]" ; (2) Counts II and III should be dismissed in whole, because 29 U.S.C. § 1132(a)(1)(B) "provides redress for the relief Plaintiff seeks[;]" and, (3) Count III must also be dismissed, because Plaintiff cannot seek recovery under 29 U.S.C. § 1132(a)(2) for individual

damages.  (ECF No. 12, PageID.79, 84-92; *see also id*., PageID.74, 77.)

Defendant FCA should prevail on all three arguments.

### 1.   Failure to State a Claim for Breach of the Disability Absence Plan ("DAP") [Count I]

FCA first targets Plaintiff's claim for breach of contract with respect to the

DAP, which is a portion of Count I of the amended complaint.  (ECF No. 12,

PageID.84-86.)  FCA argues that the DAP, which, as noted above, the parties agree

is not governed by ERISA, "is not an enforceable contract[,]" because:  (a) Section

10.04 of the DAP provides that it "shall be construed, administered and enforced

according to the laws of the State of Michigan[,]" (ECF No. 12-2, PageID.113); (b)

"[a] basic requirement of contract formation is that the parties mutually assent to

be bound[,]" *Rood v. Gen. Dynamics Corp*., 444 Mich. 107, 118, 507 N.W.2d 591,

598 (1993) (citing 1 Farnsworth, Contracts, § 3.1, p. 160); (c) Section 10.01 of the

DAP explains "no right to employment[,]" (ECF No. 12-2, PageID.112); and, (d)

Sections 8.01 and 8.02 of the DAP – *i.e.*, the provisions for termination of plan and

amendment – put decision making solely in the Company's hands (*id*.,

PageID.111-112).  In other words, "FCA reserves the right, in its sole discretion, to

terminate or modify it[,]" and did not intend to be bound.  (ECF No. 12,

PageID.86, 84.)  On the other hand, Plaintiff claims the DAP "is contractual" and

"part of Plaintiff's employment contract . . . ."  (ECF No. 14, PageID.135-140.)

To determine the existence of mutual assent, courts employ an "objective test" that looks "to all the relevant circumstances surrounding the transaction" and asks "whether a reasonable person could have interpreted the words or conduct in the manner that is alleged." *Rood*, 444 Mich. at 119, 507 N.W.2d at 598 (citing *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 641, 473 N.W.2d 268, 273 (1991)). Here, the terms of the DAP itself provide the critical information. Although Plaintiff has pointed to a number of provisions, along with a few questionable drafting decisions, that could arguably suggest the DAP is enforceable, FCA is ultimately more persuasive in pointing to its overwhelming right to modify the DAP's terms to show that FCA did not intend to be bound by the DAP, which should result in the partial dismissal of Count I under the pertinent case law.

### a.    The DAP should be construed to prevent the formation of a binding contract.

The most relevant controlling case, discussed at length in both parties' briefs, is *Heurtebise v. Reliable Bus. Computers*, 452 Mich. 405, 550 N.W.2d 243 (1996). There, the Michigan Supreme Court held that an arbitration provision contained in an employee handbook was unenforceable because the language of the handbook itself demonstrated that the employer did not intend to be bound to its terms. *Heurtebise*, 452 Mich. at 413, 550 N.W.2d at 247. In doing so, the

Court pointed to the handbook's opening statement, which expressly disclaimed the creation of "*any employment or personal contract, express or implied . . . .*" (*Id.* (emphasis in original).)  The Court also noted a clause in which "the company specifically reserve[d] the right [to] make modifications to any or all of the Policies . . . at its sole discretion . . . ."  (*Id*.)

### i.      Sections 10.11 and 7.03

Unfortunately, the DAP at issue here is a bit more muddled than the handbook in *Heurtebise*.  There are several provisions in the DAP that cause a bit of confusion.  Section 10.11 of the DAP is a separability clause, which could arguably suggest the DAP is intended to be enforceable.  (ECF No. 12-2, PageID.118.)  *See, e.g.*, *Hicks v. EPI Printers, Inc.*, 267 Mich. App. 79, 86-87, 702 N.W.2d 883, 888 (2005) ("Underlying this language is the presumption that the manual contains enforceable terms.  [A severability clause] seeks to protect as many of those terms as possible in the event that some terms are invalidated.").  Plaintiff also points to Section 7.03, the DAP's detailed "Review of Claims" or appeals procedure.  (ECF No. 12-2, PageID.109-111.)  At oral argument, FCA analogized DAP benefits to one's employer providing free coffee and donuts in the office, but if the DAP were truly so gratuitous, it would be odd to allow employees to appeal their employer's decision not to provide that amenity.  FCA maintains that the opportunity to appeal is only another layer of that gratuity, likening it to an

additional offering of bagels.  However, Section 7.03 seems less like a gratuity and

more like a commitment to ensure that FCA employees receive their salary

continuation where appropriate.  (*See e.g.*, ECF No. 12-2, PageID.110, § 7.03(b)

("A Participant or the Participant's duly authorized representative shall have a right

to appeal a denied claim…).)

### ii.    Section 10.06

Rather than expressly disclaiming the existence of a contract, Section 10.06

of the DAP, titled "Binding Effect," adds further confusion:

> This Plan shall be binding upon the beneficiaries, heirs, executors,
> administrators, distributees and assigns of all Employees and
> Participants.  This Plan shall be binding upon the successors and assigns
> of the Company, except to the extent otherwise provided in writing by
> the Company.

(ECF No. 12-2, PageID.113.)  The second sentence of this provision creates a

significant point of debate.  First, while it is true, as FCA points out, that this

language does not explicitly and unambiguously state that FCA is bound, only its

successors and assigns are (ECF No. 16, PageID.159), this argument does not quite

add up.  It is fundamental that assignees stand in the shoes of the assignor; so, an

assignee can only take on the rights and duties possessed by the assignor.  *Mecosta*

*Cnty. Med. Ctr. v. Metropolitan Grp. Prop. & Cas. Ins. Co.*, No. 345868, 2020 WL

1491755, at *3 (Mich. App. Mar. 24, 2020) (citing *Shimans v. Stevenson*, 248

Mich. 104, 108, 226 N.W. 838 (1929)).  If Section 10.06 does not bind FCA,

11

Section 10.06 could hardly be given any effect as to its successors and assigns. Yet this interpretation seemingly runs afoul of the rule that courts must construe contracts to "avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 468, 663 N.W.2d 447, 453 (2003). Second, FCA makes much of the fact that Section 10.06 is binding "except to the extent otherwise provided in writing by the Company," arguing that Sections 8.01 and 8.02, which allow FCA to terminate or amend the DAP, *serve as that writing*. (ECF No. 16, PageID.159; *see also* ECF No. 12-2, PageID.111-112.) In other words, FCA's successors and assigns are only bound to the extent that FCA itself is bound, and FCA can hardly be so described.

### iii.    Sections 8.01 and 8.02

Nonetheless, much like the handbook provision in *Heurtebise* that allowed for unilateral modification by the employer, Section 8.02 of the DAP provides that "[t]he Company . . . shall have the right at any time, and from time to time, to amend, in whole or in part, any or all provisions of the Plan" with respect to "any or all past, present or future Employees" and "*with or without retroactive effect*." (ECF No. 12-2, PageID.111-112 (emphasis added).) Section 8.01 further allows FCA to unilaterally terminate the DAP itself or its benefits. (*Id*., PageID.111.) That is, Section 8 reserves FCA's right to amend or terminate any of the would-be

12

"promises" contained in the other sections discussed here – even to terminate "at

any time and for any reason" (§ 8.01) and to amend retroactively (§ 8.02).  (ECF

No. 12-2, PageID.111-112.) This language is undeniably straightforward.  Thus,

the issue boils down to  whether, in spite of provisions suggesting otherwise,

Sections 8.01 and 8.02 render the DAP unenforceable.  Because the strength of this

language undermines the effect of all other provisions and gives FCA absolute

control over its performance, Sections 8.01 and 8.02 of the DAP should be

construed to prevent the formation of a binding contract.[1]

### b.   Plaintiff's reliance on *Rushton* does not alter this conclusion.

In his response, Plaintiff cites cases that suggest a unilateral right to modify

is on its own insufficient to show an intent not to be bound.  (ECF No. 14,

PageID.138-139.)  In *Rushton v. Meijer, Inc.*, the court noted that the employee

manual provisions at issue did not contain an express disclaimer like *Heurtebise*.

*Rushton*, 225 Mich. App. 156, 161-164, 570 N.W.2d 271, 273-275 (1997),

---

[1]  At oral argument, the Court asked counsel for Plaintiff whether parol evidence ought to be admitted, given the difficulty of parsing the DAP's contradictory terms.  Counsel conceded that parol evidence would not be necessary; the issue could be decided on the four corners of the document alone.  Further, Plaintiff's complaint does not contain a jury demand.  (ECF No. 8.)  Consequently, whether the Court decides to rule on the issue now or kick it further down the road, both legal and factual questions surrounding this issue will ultimately be decided by the Court, construing the very same document.  Judicial economy does not favor denying FCA's motion so that the argument can be taken up later.

*overruled in part on other grounds by Rembert v. Ryan's Family Steak Houses Inc.*, 235 Mich. App. 118, 596 N.W.2d 208 (1999).  The court rejected Rushton's argument that employer's reservation of the right to "modify or delete" provisions of the employee handbook was sufficient to avoid enforcement.  *Rushton*, 225 Mich. App. at 162, 570 N.W.2d at 274.  In the court's view, the parties were bound by the handbook unless and until the employer changed it.  *Id*.  Even when changed, the court found that "[a]ny change can only take effect prospectively," meaning the parties could not retroactively avoid enforcement.  *Id*.  Thus, because the handbook had never been modified during the relevant time period, both parties were bound to its terms.  *Id*.  *See also Hicks v. EPI Printers, Inc.*, 267 Mich. App. at 85-86, 702 N.W.2d at 887-888 (enforcing provisions despite employer's right to prospectively modify them); *Guelff v. Mercy Health Servs.*, No. 200040, 1999 WL 33444156, at *2 (Mich. App. May 25, 1999) (finding defendant Mercy retroactively bound by an arbitration provision).  *See also Pellow v. Daimler Chrysler Servs. N. Am., LLC*, No. 05-73815, 2006 WL 2540947, at *5 (E.D. Mich. Aug. 31, 2006) (Edmunds, J.) ("[A]n employer's reservation of the right to modify an employee manual does not necessarily render [a provision] unenforceable."). !

Plaintiff essentially puts forward the same argument made in the *Rushton* line of cases.  (ECF No. 14, PageID.136.)  He likens his case to that of an employee who could be terminated at will or have his compensation changed in the

14

future.  (*Id*.)  Termination or a change in pay, he argues, would not abrogate the requirement for that employer to pay for past work.  (*Id*.)  Analogously, Plaintiff maintains that FCA's mere ability to terminate or amend his benefits under Sections 8.01 or 8.02 of the DAP prospectively – which terms were not terminated or amended  "before he became disabled or at any time during the 12 months he was disabled under the Plan" – does not change the fact that benefits are currently owed to him.  (*Id*., PageID.137.)  Unfortunately for Plaintiff, the terms of the DAP are distinguishable from *Rushton* in a crucial respect.  The result in *Rushton* was premised on the fact that any unilateral modifications by the employer would only take effect prospectively, meaning any rights and duties acquired prior to modification remained unchanged.  Unlike *Rushton*, Section 8.02 of the DAP allows for FCA to entirely amend all terms of DAP "*with or without retroactive effect*."  (ECF No. 12-2, PageID.111-112  (emphasis added).)  Even if Plaintiff was somehow automatically entitled to a full fifty-two weeks of payments after becoming disabled, FCA has the absolute authority to, for instance, retroactively amend Plaintiff's benefits to be zero percent if it chooses to do so.  That level of control over one's own performance is hardly a promise.

FCA relies upon *Tabor v. Elec. Data Sys., Inc.* for the proposition that "a short term disability policy did not create a contract" where "the employer reserved the right [to] modify it."  (ECF No. 12, PageID.85.)  *Tabor*, No. 03-70243, 2005

WL 1030418, at *8 (E.D. Mich. Apr. 27, 2005) (Borman, J.).  There, our Court

found a short-term disability policy to be unenforceable because the employer

"reserve[d] the right to modify, change, eliminate or add [terms] at its sole

discretion."  (*Id*.)  Judge Borman made no reference as to the presence of an

express disclaimer of contract in EDS's Short Term Disability Policy.  (*Id*.)

Rather, the Court based its holding on the following principle:

> Where a promisor retains an unlimited right to decide later the nature
> or extent of his performance, the promise is too indefinite for legal
> enforcement.  The unlimited choice in effect destroys the promise and
> makes it merely illusory.

(*Id*. (citing *Floss v. Ryan's Fam. Steak Houses, Inc.*, 211 F.3d 306, 316 (6th Cir.

2000) (quoting 1 Williston, Contracts § 43, at 140 (3d ed. 1957)).)[2]  To be clear,

FCA's use of *Tabor* is not entirely on point either, even if FCA is ultimately more

persuasive.  Unlike the disability policy in *Tabor*, which made no explicit

reference to the policy's binding effect, the DAP here contains the "Binding

Effect" language from Section 10.06 that is largely responsible for complicating

this case.  (ECF No. 12-2, PageID.113.)  Yet, this case also differs from *Tabor* in

another crucial respect that is *favorable* to FCA. Where the key provision in *Tabor*

---

[2] *See also Smith v. Chrysler Fin. Corp.*, 101 F. Supp. 2d 534, 539 (E.D. Mich.
2000) (Steeh, J.) (holding that Chrysler's Employee Dispute Resolution Process's
arbitration clause was "not contractually enforceable" because it lacked "mutuality
of obligation" due to the EDRP's reservation of Defendants' rights to unilaterally
modify the EDRP's terms).

merely "reserve[d] the right to modify, change, eliminate or add [terms]"

unilaterally, Section 8.02 similarly allows FCA "to amend, in whole or in part, any

or all provisions of the Plan[,]" but with the added sentence: "Any such

amendment may be made *with or without retroactive effect*." (ECF No. 12-2,

PageID.111-112 (emphasis added).) For that reason, the overall principle that

drove the result in *Tabor* still holds weight here. The DAP's termination and

amendment provisions – Sections 8.01 and 8.02 – give FCA unrestricted control

over its past, present, and future performance. Indeed, the language of the

termination clause prevents FCA from being committed to any particular

performance, and the benefits provided by FCA are entirely gratuitous. In short,

the DAP is not definite enough to enforce.[3]

---

[3] The remainder of the case law cited by Plaintiff is either irrelevant or
misinterpreted. (ECF No. 14, PageID.139-140.) *See Bragg v. ABN AMRO N. Am.,
Inc.*, 579 F. Supp. 2d 875, 891-892 (E.D. Mich. 2008) (Rosen, J.); *Shaw v. AT&T
Umbrella Ben. Plan No. 1*, 795 F.3d 538 (6th Cir. 2015); *Welsh v. Wachovia
Corp.*, 191 F. App'x 345, 347, 351-357 (6th Cir. 2006); and, *Hackney v. Lincoln
Nat'l Fire Ins. Co.*, 657 F. App'x 563, 573-576 (6th Cir. 2016). Plaintiff cites
*Bragg*, *Shaw*, *Welsh*, and *Hackney* for the proposition that non-ERISA short-term
disability plans are enforceable. However, FCA rightly points out that *Bragg* and
*Shaw* "did not address whether a non-ERISA disability plan is an enforceable
contract." (ECF No. 16, PageID.161.) Moreover, *Welsh* is distinguishable,
because Wachovia's STD Plan arose under North Carolina law and was treated as
"a contract between Welsh and Wachovia." *Welsh*, 191 F. App'x at 347. The
issue of whether the non-ERISA, short-term benefit plan was enforceable does not
appear to have been contested; rather, the issues on appeal were the reasonableness
of the denial of benefits and the proper bases for awarding damages. To the extent
Plaintiff cites *Hackney* to argue that DAP was not too illusory to be binding (ECF
No. 14, PageID.137-138, 140), he fails to note that the Sixth Circuit distinguished

### 2.   Failure to State a Claim for Equitable / Declaratory / Injunctive Relief under § 1132(a)(3) [Count II]

Next, FCA moves to dismiss Count II of the amended complaint, which is

based on 29 U.S.C. § 1132(a) and requests an array of equitable relief in the form

of:

> (a) Payment and Restitution of prejudgment and post-judgment interest at the lawful rate to fully compensate Plaintiff and make him whole and to preclude unjust enrichment and a windfall to defendants;

> (b) declaratory ruling or application of equitable estoppel to preclude Defendants from interpreting and applying Section 401(c) incorrectly and thus using an incorrect methodology to deny LTD claims, including Plaintiff's claim, and for such other and further equitable relief as the Court deems necessary and proper to protect Plaintiff's interests as a disabled employee.

---

*Hackney* from *Furtula v. Univ. of Ky.* – where the university was able "to unilaterally alter or amend its employees benefits[,]" – because, in *Hackney*, "the clause permitting modification limited alterations or termination of benefits to the discretion *of the Plan Sponsor*[,]" *i.e.*, not the employer. *Hackney*, 657 F. App'x at 574-575 (citing *Furtula*, 438 S.W.3d 303, 309 (Ky. 2014), *as modified* (June 23, 2014) (emphasis added)). Where that right rested *with the employer* in *Furtula*, the court reached the opposite conclusion. *Furtula*, 428 S.W.3d at 309 ("when the recipient of a statement is informed that the maker of the statement does not intend to enter into a contract, as occurred in this case with the University's clear statement that the handbook was not a contract, the formation of a contract will not be implied."). Furthermore, *Hackney* employed Kentucky, not Michigan law. Lastly, Plaintiff's reference to *McAlindon v. Clio Golf Course, Inc.* provides little benefit, as that case involved McAlindon's execution of a separate document from the employee handbook. No. 225236, 2001 WL 1404706, at *2 (Mich. App. Nov. 9, 2001).

(ECF No. 8, PageID.48-49 ¶ 31.)  Plaintiff further requests that:

> FCA, Sedgwick and the LTD Plan should be enjoined from or equitably
> estopped from relying on 4.01(c) of the LTD Plan, which was at least
> ambiguous, as a result of its wrongful and inequitable conduct of
> terminating the Plaintiff 's DAP benefits prematurely as a pretext to
> preclude his entitlement to LTD benefits, thereby attempting to block
> Plaintiff's entitlement to LTD benefits. Enforcement of said provision
> removes from the plan any reasonable claims procedure in violation of
> 29 USC Sec 1133(2).  Alternatively, any alleged failure to exhaust DAP
> benefits should be excused or waived as futile.

(*Id*., ¶ 32.)  Section 4.01(c) requires an LTD claimant to have exhausted his or her

DAP benefits and any entitlement to unused earned vacation.  (ECF No. 12-3,

PageID.124.)  Plaintiff alleges that FCA's interpretation and application of Section

4.01(c) "impacts and affects other Plan members and beneficiaries as well as

Plaintiff . . . ."  (*Id*., ¶ 33.)

The crux of FCA's argument is that Plaintiff's request for equitable relief

under § 1132(a)(3) is a mere repackaging of a wrongful denial of benefits claim

under § 1132(a)(1)(B) and that the former cannot be asserted whenever the latter

provides an adequate remedy.  (ECF No. 12, PageID.87-89.)  FCA also seeks to

have Count II dismissed for its failure to state an estoppel claim.  (*Id*., PageID.89-

91.)

<b>a.   <u>Dismissal of Count II as Duplicative of Plaintiff's<br>Wrongful Denial of Benefits Claim</u></b>

<b>i.   Separate and distinct from denial of benefits</b>

Plaintiff cannot maintain his § 1132(a)(3) claim for equitable relief because it is a repackaging of his § 1132(a)(1)(B) wrongful denial of benefits claim. Approximately twenty-five years ago, the Supreme Court acknowledged the concern that plaintiffs might repackage their denial of benefits claims under § 1132(a)(3) for a second bite at the apple and determined that a § 1132(a)(3) claim is maintainable if, and only if, all other subsections of § 1132(a) fail to provide a remedy. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'").  Section 1132(a) provides in relevant part that "[a] civil action may be brought . . . by a participant or beneficiary . . ." to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[,]" or by "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"  29 U.S.C. §§ 1132(a)(1)(b), (a)(3).  A Section 1132(a)(3) breach-of-fiduciary-duty claim must be "based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under [§ 1132(a)(1)(B)] is otherwise shown to be

inadequate." *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (*en banc*) (emphasis omitted). Thus, if a claim *could* be adequately addressed as a denial of benefits claim under § 1132(a)(1)(B), regardless of its merits, then the § 1132(a)(3) claim must be dismissed. *DeClercq v. Exeli, Inc.*, No. 17-10811, 2019 WL 535549, at *5 (E.D. Mich. Feb. 11, 2019) (Levy, J.) (citing *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 841 (6th Cir. 2007)).[4] Put another way, the overall test for Section 1132(a)(3) is whether any of Section 1132's other remedies could redress plaintiff's injury. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (citing *Varity*, 516 U.S. at 512).

Here, the conclusion that denial of Plaintiff's claim for benefits could be adequately addressed under § 1132(a)(1)(B), *i.e.*, he cannot maintain his claim for equitable relief, is supported by several Sixth Circuit cases. First, Plaintiff's complaint fails to demonstrate that there is any "distance" between the recovery of his benefits under the LTDBP and his injury for which equitable relief ought to compensate. *Fenwick v. Hartford Life & Accident Ins. Co.*, 841 F. App'x 847, 860

---

[4] Courts have characterized § 1132(a)(1)(B) as providing a set of three discrete remedies: "[1] to recover accrued benefits, [2] to obtain a declaratory judgment that [a participant or beneficiary] is entitled to benefits under the provisions of the plan contract, and [3] to enjoin the plan administrator from improperly refusing to pay benefits in the future." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985).

(6th Cir. 2021) (rejecting a claim under § 1132(a)(3) because plaintiff did not show "distance between recovery of the claimed benefits . . . and being made whole."). Second, as in *Outward v. Eaton Corp. Disability Plan for U.S. Emp.*, where plaintiff sought relief to enjoin "Defendant's practice of . . . inequitable interpretations and conduct in connection with it's [sic] interpretation of the Plan[.]" *Outward*, 808 F. App'x 296, 313-314 (6th Cir. 2020), Plaintiff here requests "a declaratory ruling or application of equitable estoppel to preclude Defendants from interpreting and applying Section 4.01(c) incorrectly" and that FCA be "enjoined from or equitably estopped from relying on 4.01(c) of the LTD Plan, which was at least ambiguous, as a result of its wrongful and inequitable conduct . . . ." (ECF No. 8, PageID. 48-49, ¶ 31(b), 32.)  This is only a rephrasing of a wrongful denial claim, and "ultimately a re-adjudication of the denial of her claim for benefits." *Outward*, 808 F. App'x at 315.  If the relief Plaintiff seeks in Paragraphs 31(b) and 32 remedies were granted, the result would be the same: FCA would interpret the LTDBP in the manner desired by Plaintiff, presumably allowing him to secure his benefits.  Additionally, the pre-judgment and post-judgment interest sought in equity by Plaintiff to make him whole (*see* ECF No. 8, PageID.48 ¶ 31(a)) can be recovered under § 1132(a)(1)(B), as pleaded in Count V of his amended complaint and as mentioned below.  *See Rochow*, 780 F.3d at 375-376 ("Rochow's request for prejudgment interest appears to be a remedy the

district court could have granted, though not at an excessive rate."). Thus, Plaintiff's claim for equitable relief is no different than if he were to "recover benefits under the terms of the plan" or "clarify his right to future benefits under the terms of the plan" under § 1132(a)(1)(B).

Third, in *Strang v. Ford Motor Co. Gen. Ret. Plan*, the plaintiff sought to maintain both a wrongful denial claim and an equitable claim after defendant refused to consider plaintiff's election for lump-sum benefits partially on the basis that proper forms were not submitted. *Strang*, 693 F. App'x 400, 405 (6th Cir. 2017.) Plaintiff argued that the rule against "repackaging" is only to avoid "duplicative relief, not alternative pleading." (*Id*.) Nevertheless, the Sixth Circuit rejected the notion that a § 1132(a)(3) claim could exist as an alternative remedy where relief *could* be obtained under § 1132(a)(1)(B) "*irrespective of the degree of success obtained*." *Id*. (emphasis in original) (quoting *Rochow*, 780 F.3d at 372). Much like the plaintiff in *Strang*, who took issue with the defendant's denial of benefits on the partial basis that she did not use the proper forms, *Strang*, 693 F. App'x at 404, Plaintiff here takes issue with the use of Section 4.01(c) to deny his claim "without even any review of the merits of the claim," which he alleges "removes from the plan any reasonable claims procedure in violation of 29 USC Sec 1133(2)." (*Id*., ¶ 32, 34.) In both cases, the fact remains that full recovery under § 1132(a)(1)(B) is still technically possible.

Additionally, in his response brief, Plaintiff makes a similar argument to the one made by the plaintiff in *Strang* that his claim for equitable relief is merely alternative pleading:

> [I]f the Court agrees that Defendants properly interpreted Section 4.01(c), so that Plaintiff can not recover under the terms of the express Plan language, but that Plaintiff is still entitled to relief because that provision **improperly delegates fiduciary duties to a non-fiduciary under a non-ERISA plan that FCA asserts is non-binding on them, to make a final and binding decision on eligibility for LTD benefits based on a decision under the non ERISA DAP plan standards,** and abrogates the ERISA requirements for a full and fair review and for a reasonable claims procedure or would make LTD claims illusory because FCA could deny with impunity its allegedly non-contractual and non-binding DAP claims with no consequences, that would be outside the language of the Plan and relief is available under 502(a)(3) for the violations of ERISA.[5]

(ECF No. 14, PageID.141 (emphasis in original).)  The essence of the argument is that, even if the Court finds that FCA interpreted Section 4.01(c) correctly, the LTDBP itself violates ERISA.  However, following the reasoning under *Strang,* recovery under § 1132(a)(1)(B) is nevertheless a possibility, barring the use of § 1132(a)(3) as a safety net.  Moreover, Plaintiff remains free to argue that the denial of benefits was wrongful under § 1132(a)(1)(B), because FCA's determination was premised on an interpretation that is inconsistent with ERISA.  Thus, Plaintiff is not proposing a separate or alternative legal theory; he is asking for a second bite at

---

[5] ERISA Section 502(a) is codified at 29 U.S.C. § 1132(a).  Although both parties (and the case law) use them interchangeably, U.S. Code sections are used in this report for the sake of consistency.

the apple should he fail to show that FCA wrongfully denied him benefits under the LTDBP.[6]

### ii.    Class relief

Plaintiff also seeks to shoehorn his case into an exception to the "repackaging" doctrine found in *Hill v. Blue Cross Blue Shield of Mich.*, 409 F.3d 710 (6th Cir. 2005).  (ECF No. 14, PageID.142.)  In *Hill*, plaintiffs filed a putative class action lawsuit for wrongfully denied benefits and plan-wide injunctive relief. *Hill*, 409 F.3d at 715-716.  Section 1132(a)(1)(B) provided relief for the denial of individual claims, while § 1132(a)(3) remedied plan-wide mishandling of claims in which defendants did not follow the terms of the plan.  *Id*., 409 F.3d at 717-718, 719-721.  Thus, the Sixth Circuit allowed the § 1132(a)(3) claim to go forward,

---

[6] Under the terms of the LTDBP, Plaintiff is not totally precluded from recovering benefits.  Section 4.01(c) simply states that participants must have "exhausted DAP Payments" to be eligible.  (ECF No. 12-3, PageID.124.)  It is not necessary to determine if exhaustion requires receipt of DAP payments for fifty-two weeks, as opposed to receiving as many as possible until termination.  Indeed, Plaintiff himself suggests Section 4.01(c) is really intended to ensure that participants have been disabled by LTDBP standards for at least one year.  (ECF No. 14, PageID.134.)  Further, Plaintiff alleges in Count II that FCA interpreted 4.01(c) improperly, that it used an "incorrect methodology" to deny him benefits, and that Section 4.01(c) was "at least ambiguous."  (ECF No. 8, PageID. 48-49, ¶ 31(b), 32.)  Plaintiff's case, therefore, is not one where he can only seek recovery outside the terms of the plan.  Rather, he is in a position to argue on the merits that FCA, by incorrectly interpreting the terms of the plan, wrongfully denied him benefits under § 1132(a)(1)(B).  The strength of that argument is irrelevant; it is enough to say that this is an argument Plaintiff *could* make and upon which he could potentially succeed.  *DeClercq*, 2019 WL 535549, at *5.

because it recognized that it was addressing a separate and distinct injury *to the entire class* that could only be remedied with an injunction. *Id.*, 409 F.3d at 717-718.

Plaintiff does not fall into this exception. Plaintiff does allege that FCA's interpretation of Section 4.01(c) "impacts and affects other Plan members and beneficiaries as well as Plaintiff" and seems to request that FCA be enjoined from its current interpretation with respect to all LTD claims, including his own. (ECF No. 8, PageID.48-49, ¶¶ 31(b), 33.) However, courts have repeatedly held that a perfunctory allegation of plan-wide harm does not bring a § 1132(a)(3) claim into the *Hill* exception. *See*, *e.g.*, *Fenwick*, 841 F. App'x at 860 ("[T]he exception we made in *Hill* . . . does not apply because [plaintiff] brought her claim as an individual rather than a class."); *Titus v. Operating Engineers' Local 324 Pension Plan*, No. 16-10951, 2018 WL 836528, at *5 (E.D. Mich. Feb. 13, 2018) (Drain, J.) (refusing to apply the *Hill* exception because all counts ultimately sought to redress a denial of individual benefits); *Outward*, 808 F. App'x at 315 (concluding that plaintiff's claim sought only individual benefits despite plaintiff's perfunctory claim that her § 1132(a)(3) claim sought to enjoin "an overly restrictive plan interpretation" for "the benefit of all beneficiaries . . . ."). Even if the Court looked past this, class-wide relief from an individual lawsuit is "rarely justified." *See*

*Fenwick*, 841 F. App'x at 860 (quoting *Sch. Dist. v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 301 (6th Cir. 2009) (*en banc*) (McKeague, J., concurring)).

Plaintiff's reliance on other case law is similarly unavailing.  (ECF No. 14, PageID.143-144.)  Plaintiff cites *Amara v. CIGNA Corp.* for the proposition that equitable remedies like estoppel, surcharge, and reformation are appropriate remedies for inequitable conduct.  *Amara*, 563 U.S. 421, 438-444 (2011).  Yet, the Supreme Court applied § 1132(a)(3) in *Amara*, because it was a putative class action by employees challenging their employer's adoption of a new basic pension plan, a remedy the Court expressly held not to be authorized by § 1132(a)(1)(B).  *Amara*, 563 U.S. at 424-425, 436-438.  Similarly, in *Pearce v. Chrysler Grp. LLC Pension Plan*, a § 1132(a)(3) claim was allowed because it was premised on representations in summary documents of an employee plan, which, under *Amara,* do not constitute the terms of a plan for the purposes of § 1132(a)(1)(B).  *Pearce*, 893 F.3d 339, 344 (6th Cir. 2018).  Thus, in *Amara* and *Pearce*, the injuries being redressed were explicitly outside of § 1132(a)(1)(B)'s scope.[7]

---

[7] Plaintiff cites *Silva v. Metropolitan Life Ins. Co.*, where plaintiff was able to assert Section 1132(a)(3) and wrongful denial of benefits claims simultaneously. *Silva*, 762 F.3d 711, 725-728 (8th Cir. 2014).  However, this case originates from outside our circuit, and that is especially relevant because the Eighth Circuit has adopted an entirely different interpretation of *Varity* which allows plaintiffs to assert otherwise repackaged claims in the alternative.  *Id*. at 727-728.  The other out-of-circuit case cited by plaintiff, *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 747-748 (2d Cir. 2019), was another reformation claim, meaning it is inapplicable for the same reason as *Amara*.  *Laurent*.

**b.**     **Dismissal of Plaintiff's Claim for Equitable Estoppel for Failure to State a Claim**

Regardless of whether Plaintiff is categorically precluded from any remedy under § 1132(a)(3), Plaintiff's request for equitable estoppel under that provision should be dismissed in any case because Plaintiff did not plead a factual basis for that request.  (*See* ECF No. 8, PageID.48 ¶ 31(b).)  The Supreme Court has recognized that "appropriate equitable relief" in Section 1132(a)(3) includes equitable estoppel.  *Amara*, 563 U.S. at 441-442.  Sixth Circuit law requires those asserting a claim for equitable estoppel to satisfy five elements:

> (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Chebowski v. Kelsey-Hayes Salaried Pension Plan*, No. 15-13092, 2016 WL 5477335, at *3 (E.D. Mich. Sept. 29, 2016) (Hood, C.J.) (citing *Armistead v. Vernitron Corp.*, 844 F.2d 1287, 1298 (6th Cir. 1991)).  Additionally, when plan provisions are unambiguous, there must be a showing of constructive fraud, along with "'(1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3)

extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.'" *Titus*, 2018 WL 836528, at *7 (quoting *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010)).

Here, FCA accurately points out that Count II fails to allege facts on which to base an estoppel claim.  (*See* ECF No. 8, PageID.48-49 ¶¶ 30-34; ECF No. 12, PageID.89-91.)  Even if Section 4.01(c) of the LTDBP plan is "at least ambiguous" as Plaintiff pleads, he has not laid out the core elements for any estoppel claim under ERISA.  (ECF No. 8, PageID.49, ¶ 32.)  The complaint does not point to any language that amounts to a material representation, awareness of "true facts" by FCA, justified reliance by Plaintiff, and so on.  While Plaintiff provides a summary of case law in response to this attack on his pleading, he does not successfully demonstrate how this theory fits with the instant case or provides relief under the pleaded facts (*see* ECF No. 14, PageID.142-144), and, thus, FCA requests in its reply brief that Plaintiff's request for equitable estoppel be considered waived (ECF No. 16, PageID.164).  Regardless of whether the issue has truly been waived, the paucity of factual allegations to support an estoppel claim render it dismissible. Therefore, the Court may, alternatively, dismiss all or some of Count II, to the extent it is premised on equitable estoppel.

### c.  Summation

At the end of the day, Plaintiff is simply seeking benefits he believes are due to him under the LTDBP, making § 1132(a)(1)(B) the appropriate remedy. Moreover, he has failed to state a claim for equitable estoppel.  For these reasons, Plaintiff's claim for equitable, declaratory and injunctive relief, Count II, should be dismissed.

### 3.    Failure to State a Claim for Breach of Fiduciary Duty [Count III]

Finally, FCA seeks the complete dismissal of Count III of Plaintiff's amended complaint, *i.e.*, Plaintiff's claim for breach of fiduciary duty (ECF No. 8, PageID.49-50 ¶¶ 35-39).  Plaintiff's description of this claim is difficult to navigate.  He pleads:

> Pursuant to 29 USC §1104 (a), Defendants are obligated to discharge their duties as fiduciary in the interests of beneficiaries, including Plaintiff and was obligated to provide Plaintiff with accurate and complete information including the proper interpretation and meaning of Section 401(c)of the Plan and Defendants breached their fiduciary duties by utilizing and incorrect and inequitable methodology to decide and deny LTD claims without any review of the merits of the claim which in effect allows ERISA fiduciaries to delegate to non-fiduciary DAP claims persons ERISA regulated decisions and procedures in reviewing claim, including the appeal process and obligation to provide a full and fair review.  This conduct is not in the best interests of Plaintiff or other Plan members or beneficiaries but rather was in the best interest of Defendants in violation of their ERISA fiduciary duties and further precluded from the Plan any reasonable claims procedure in violation of 29 USC sec. 1133(2).

(ECF No. 8, PageID.50, ¶ 37.)  Plaintiff alleges the fiduciary duties were further breached when FCA failed to perform "full and fair reviews of Plaintiff's LTD and

DAP claims and appeals . . . [,]" including "not considering his LTD claim on the merits," and, thus, acted in "Defendant's interests only." (*Id.*, ¶ 38.)

FCA posits that "Plaintiff cannot maintain a claim for breach of fiduciary duty[,]" because "ERISA Section 404 does not provide for a cause of action[,]" and "the remedial provisions of ERISA Section 502(a) [*i.e.*, 29 U.S.C. 1132(a)] provide the exclusive mechanism for relief relating to ERISA plans." (ECF No. 12, PageID.91-92.) Because § 1132(a)(2) cannot support claims for individual damages, and because § 1132(a)(1)(B) already provides Plaintiff with an adequate remedy for his injury, Plaintiff's breach of fiduciary duty claim should be dismissed.

More specifically, if there is any provision that would allow Plaintiff to recover for a breach of fiduciary duty that resulted in a denial of benefits, it would have to be found in 29 U.S.C. § 1132(a), as the civil enforcement scheme contained therein has been recognized as the exclusive mechanism for recovery. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52-53 (1987) (agreeing that "Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) [29 U.S.C. § 1132(a)] be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits[.]"). Although set forth elsewhere in his complaint, Plaintiff's amended complaint seems to be based on 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3). (ECF

No. 8, PageID.48 ¶ 31.)  Section 1132(a)(2) authorizes "appropriate relief" under

29 U.S.C. § 1109, which provides for liability of fiduciaries who breach their

duties.  The Supreme Court has also recognized that § 1132(a)(3) serves as a

"catch-all" that offers individualized equitable relief for breaches of fiduciary duty

that § 1132(a) does not otherwise remedy.  *See Varity*, 516 U.S. at 511-512

(holding individual fiduciary duty claims under § 1132(a)(3) to be consistent with

the structure of § 1132(a)).

To survive FCA's motion to dismiss, Plaintiff's claim must be appropriate

under either § 1132(a)(2) or (a)(3); yet, neither provision will allow his claim to go

forward.  As to Section 1132(a)(2), the Court turns to *Massachusetts Mut. Life Ins.*

*Co. v. Russell*, wherein an individual beneficiary, under two employee benefit

plans, brought an action against her employer, among other things, for failure to

process claims in a fair and diligent manner.  *Russell*, 473 U.S. at 137-138.  The

Supreme Court considered whether this failure gave rise to a cause of action under

29 U.S.C. § 1109(a) that could be asserted by a plan beneficiary under 29 U.S.C. §

1132(a)(2).  *Id*. at 138.  The Court held that ERISA Section 409(a) (*i.e.*, 29 U.S.C.

§ 1109(a)) does not provide "express authority for an award of extracontractual

damages to a beneficiary." *Id*. at 139-144.  The Court acknowledged that §

1132(a)(2) "authorizes a beneficiary to bring an action against a fiduciary who has

violated § 409[,]" *Russell*, 473 U.S. at 141, which provision is only concerned with

"mak[ing] good to such plan any losses to the plan" that "result[ed] from each such breach," 29 U.S.C. 1109(a). Put another way, "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Russell*, 473 U.S. at 142. Since Russell sought "extracontractual" individual damages for a breach of fiduciary duty, her claim could not be maintained under ERISA Section 409 (*i.e.*, 29 U.S.C. § 1109) and § 1132(a)(2). *Id.*, 473 U.S. at 144. Here, like in *Russell*, Plaintiff seeks individual damages for a breach of fiduciary duty. Plaintiff, in his request for relief, seeks "[a] determination that Defendants breached their fiduciary obligations, resulting in the loss of benefits by Plaintiff." (ECF No. 8, PageID.51, ¶ 3.) Perhaps to maneuver around *Russell*, Plaintiff does allege that "other Plan members and beneficiaries are also adversely impacted" by the alleged breach. (*Id.*, PageID.50, ¶ 39; *see also id.*, PageID.46 ¶ 18, 49 ¶ 33, 50 ¶ 37, 51 ¶ 2.) Yet, no other participants or beneficiaries are parties to this dispute. For those reasons, Plaintiff's claim for breach of fiduciary duty cannot be based on § 1132(a)(2).

As for § 1132(a)(3), the "repackaging" doctrine used to dismiss Plaintiff's claim for equitable relief likewise applies here as to his claim for breach of fiduciary duty. *See*, *e.g.*, *Rochow*, 780 F.3d at 372 (concluding an ERISA Section 404(a), 29 U.S.C. § 1104(a) breach of fiduciary claim under the Section 1132(a)(3)

catchall provision was "unnecessary and unavailable" because ERISA Section

502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provided an adequate remedy); *Outward*,

808 F. App'x at 313-315 (interpreting plaintiff's Section 1132(a)(3) breach of

fiduciary duty claim as "a re-adjudication of the denial of her claim for benefits.").

 Thus, no provision of § 1132(a) provides a proper home for Plaintiff's

breach of fiduciary duty claim, and the Court should dismiss Count III.

 **E.** **Conclusion**

 As to Plaintiff's DAP-related claims, FCA's expansive ability to control the

extent of its performance reveals that the DAP is not an enforceable contract.  As

for Plaintiff's LTDBP-related claims, case law in the Sixth Circuit weighs

decidedly against allowing Plaintiff to hold onto his breach of fiduciary duty and

equitable relief claims when his claim for LTD benefits in Count I serves as an

adequate remedy.  Accordingly, the Court should **GRANT** FCA's motion to

dismiss Counts II and III, and **PARTIALLY DISMISS** Count I  (*i.e.*, to the extent

it is premised on a breach of contract/DAP claim).  If the Court agrees with these

conclusions, then part of Count I (wrongful denial of LTDBP benefits), all of

Count IV (attorney fees and costs), and all of Count V (pre-judgment and post-

judgment interest) would remain.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated:  March 8, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE